UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRUCTURES UNLIMITED, INC., <br><br> Plaintiff, <br><br> v. <br><br> FIRST NATIONAL SURETY COMPANY OF AMERICA, and DOES 1 through 10 inclusive, <br><br> Defendant. | CIV  S-04-1140  PAN (JFM) <br><br><br> <u>ORDER</u> |

—o○o—

On November 3, 2005, defendant First National Surety moved for summary judgment pursuant to Fed. R. Civ. P. 56 on plaintiff's complaint filed June 15, 2004 under the Miller Act, 40 U.S.C. § 3131 et seq.  This case proceeds before this court by consent of the parties.  28 U.S.C. § 636(c); E. D. Cal. L. R. 73-301.  Plaintiff is represented by Thomas M. Papez; defendant is represented by Matthew P. Shelton.  As oral argument was unnecessary to resolve this matter, the hearing scheduled for December 14, 2005, was vacated and the court issues this order.  E. D. Cal. L. R. 78-230(h).

Upon review of defendant's motion and all papers in support and opposition thereof, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

/////

I. BACKGROUND

Prior to November 2001, Buddy's Contracting Service, Inc. ("Buddy's") entered into a prime contract with the U.S. Navy to construct a concrete pad and enclosure over a sludge dewatering bed at the Marine Corps Mountain Warfare Training Center in Bridgeport, California. On October 15, 2001, defendant First National executed a payment bond for the benefit of Buddy's, guaranteeing payment to all subcontractors. 40 U.S.C. § 3131(b)(2).

On November 16, 2001, Buddy's subcontracted with plaintiff Structures Unlimited, Inc. ("Structures") for construction of the enclosure over the dewatering beds for a fixed price of $239,700.00. Structures foreman James Murphy arrived at the site on August 13, 2002, to commence work but discovered that the concrete pad necessary to commence installation of the enclosure was not completed by Buddy's and that a significant number of the laminated panels that were to be part of the enclosure were damaged. Structures commenced work five days later, when the pad was ready, and despite the need that several laminated panels be replaced. The parties agreed that the replacement panels would be installed in Spring 2003; they were in fact installed in July 2003. Nonetheless, a final inspection was conducted October 1, 2002, and the Navy took possession on October 2, 2002. Pursuant to the parties' subcontract, Structures warrantied its work for one year commencing October 1, 2002; however, warranty was extended for a year commencing with the July 2003 installation.

Structures billed Buddy's for 100% of the work on August 14, 2002 ; while the bill included a notarized statement of project completion, a cover letter of the same date explained "we are currently on site installing our portion of the above mentioned project, and expect to be complete by the end of the month, with the possible exception of minor punch list items."

Buddy's paid Structures $23,970.00 on September 30, 2002, and $172,584.00 on November 29, 2002, leaving a balance of $43,146.00   Buddy's filed for bankruptcy in January 2004. On June 15, 2004, plaintiff filed this complaint seeking damages in the amount of

1  $43,146.00, plus attorney fees and costs.

2    Defendant seeks summary judgment based on their assertion Structures'

3  complaint was not filed within one year "after the day on which the last of the labor was

4  performed or material was supplied" by Structures, as required by 40 U.S.C. § 3133(b)(4).

5    Defendant made the same assertion in its motion to dismiss, which this court

6  denied on November 15, 2004, for the following reasons (at pp. 2-3):

7    The motion is based upon an exhibit to the complaint showing that Structures
  charged the full contract price by invoice dated August 14, 2002.  In opposition,

8    Structures points to paragraph 11 of the complaint wherein Structures alleged that
  "on or about July 24, 2003, after Structures had substantially performed its

9    obligations under the subcontract, Buddy's breached the subcontract in that it
  failed to pay Structures." . . . It is not plain from the complaint that this action is

10   time-barred.  The contract, which is attached to the complaint, contains elaborate
  provision for payment that neither party has addressed.  It is possible but not

11   inevitable that all labor and material had been provided by August 14, 2002.  It is
  equally possible that the last of the labor was performed or material supplied on or

12   about July 24, 2003.

13   The only change in defendant's contention is the standard to be applied.

14 Defendant asks the court to reconsider the issue based on the entire file and the facts which

15 defendant alleges are undisputed.  Plaintiff opposes the motion on the ground material facts

16 remain disputed.

17 II. <u>STANDARDS FOR A MOTION FOR SUMMARY JUDGMENT</u>

18   Summary judgment is appropriate when it is demonstrated that there exists "no

19 genuine issue as to any material fact and that the moving party is entitled to a judgment as a

20 matter of law."  Fed. R. Civ. P. 56(c).

21   Under summary judgment practice, the moving party
  always bears the initial responsibility of informing the district court

22   of the basis for its motion, and identifying those portions of "the
  pleadings, depositions, answers to interrogatories, and admissions

23   on file, together with the affidavits, if any," which it believes
  demonstrate the absence of a genuine issue of material fact.

24

25 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

26 nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

III. ANALYSIS

40 U.S.C. § 3133(b)(4) provides:

> An action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action.

In assessing when the "last of the labor was performed or material was supplied," the Ninth Circuit considers "whether the work was performed and the material supplied as 'a part of the original contract' or for the 'purpose of correcting defects, or making repairs following inspection of the project.'"  U. S. for Use and Benefit of Austin v. Western Elec. Co., 337 F.2d 568, 572-573 (9th Cir. 1964) (finding question of fact whether identified work was required to "complete" the subcontract), quoting United States v. Gunnar I. Johnson & Son, Inc., 310 F.2d 899, 903 (8th Cir. 1962); accord, U.S. ex rel. J & A Landscape Co. v. Reza, Inc., 30 Fed. Appx.

1  708, 710 (9th Cir. 2002) (finding question of fact whether identified work "was performed before
2  Final Acceptance, and, therefore, pursuant to its contractual obligations"); <u>U.S. for Use and Ben.</u>
3  <u>of Grinnell Corp. v. DNI, Inc.</u>, 106 F.3d 411, 1997 WL 30978, (9th Cir.1997) (finding that final
4  inspection of sprinkler system by experienced technician was pursuant to the parties' contract);
5  <u>U.S. for Use and Benefit of P.W. Berry Co., Inc. v. General Elec. Government Engineering &</u>
6  <u>Management Services</u>, 1994 WL 91977 (D.Ore. 1994) (finding question of fact whether
7  identified labor was required by parties' subcontract based on principle that "inspection of work
8  already installed" or "correction of defective work" will not extend statutory period); <u>T & A</u>
9  <u>Painting, Inc. v. U.S.</u>, 673 F.Supp. 994, 996 (N.D.Cal. 1987) (finding "warranty work"
10 equivalent to "repair work" outside the terms of the original contract).

11        Defendant relies on plaintiff's own documents and oral representations, including
12 billing statements, demands for full payment and statements of project completion, to argue that
13 Structures performed the last of its labor and supplied the last of its material no later than
14 September 7, 2002.  Plaintiff asserts that it represented its work to be complete in order to make
15 defendant's billing cycle ("the 25th of the month").  Defendant also relies on a January 8, 2003
16 letter from the U.S. Navy contracting officer, which states that a final inspection was conducted
17 on October 1, 2002; that the Navy "took possession of the work completed under the above
18 subject contract on October 2, 2002;" that "the construction warranty period . . . commenced on
19 October 1, 2002, and continues for one year;" the "warranty issues regarding the delaminating
20 Kalwall roof and wall panels . . .forms part of the construction warranty" and requires an on-site
21 meeting in spring 2003 to "evaluate and determine if any action or replacement of Kalwall panels
22 are required;" and that any further work on the panels is to "be completed prior to the expiration
23 of the contract warranty period on September 30, 2003."

24        Plaintiff asserts it completed only ninety percent of its subcontract work by
25 September 7, 2002, and that defendant's site construction supervisor authorized completion of
26 the remaining ten percent of the work in Spring 2003.  Plaintiff relies, for example, on the

1 deposition of its foreman, James Murphy, that Jim Price, Buddy's site supervisor, authorized
2 Structures' delay until Spring 2003 to torque screws, caulk edges and flashing, and paint, which
3 Murphy testified was work required by the parties' contract, not warranty work.  See Murphy
4 Depo., at pp. 35-37, 44-47.  Plaintiff also asserts that it was required to warranty "the work" from
5 one year after the date of installation of the new panels in July 2003, although it is unclear
6 whether this "extended warranty" was on the entire enclosure or only the new panels, and how
7 this warranty satisfied the parties' contractual agreement that Structures provide only a one-year
8 warranty "from date of substantial completion of the installation of the total building."

9       Viewing the evidence most favorably to plaintiff,[1] the court finds that plaintiff has
10 demonstrated a genuine issue of material fact on the central question–for which plaintiff bears
11 the burden of proof–whether plaintiff's July 2003 installation of new panels and additional work
12 including  torquing, caulking and painting, constituted the "last of the labor performed" or
13 "material supplied" within the meaning of 40 U.S.C. § 3133(b)(4).  Questions of fact remain in
14 order to assess whether Structures' July 2003 work was "required to complete the subcontract" or
15 was "for the purpose of correcting defects or making repairs" under the subcontract.  Austin,
16 supra, 337 F.2d at 572-573.  This issue is properly submitted to the trier of fact at trial.

17       Accordingly, for the foregoing reasons, defendant's  November 3, 2005 motion
18 for summary judgment is DENIED.
19 DATED: April 6, 2006.

UNITED STATES MAGISTRATE JUDGE

23 006:stru1140.ord

---

[1] The court is required to view the evidence most favorably to plaintiff.  See, Suzuki Motor Corp. v. Consumers Union of U.S., Inc., 330 F.3d 1110, 1132 -1133 (9th Cir. 2003), quoting Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991) ("'On summary judgment, we must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence'").